Again, I think it depends on the alternate facts as the officer sees them at the time. What other facts are there in this case? Because they found the pills in her purse. Well, we're limited, Your Honor, to the facts in the complaint, and those are that there are multiple prescription pill bottles and the mixture of multiple prescriptions within individual bottles. What gave them probable cause to search in her purse? What gave them probable cause to enter the car? What gave them probable cause to search her purse? I would point out that those issues have not been raised. There's no allegation about the initial stop being problematic. There's no allegation. There's an argument that there's no consent to search, but there's no specific allegation that they lack probable cause to search. There's many reasons why probable cause could develop on the scene. You know, for example, the officer could look in a window and see something in plain view that What did they see? What did they see in plain view? It's not in the record, Your Honor. It's open container of alcohol. But there's many reasons. Again, that's not part of the facts. We're restricted to the complaint, but the complaint does not say there was no probable cause to search the vehicle in the first instance. Has there been a request to amend the complaint? There was a subsequent request to add another party. Now, that was another matter. I don't is the operative and the most recent. The other factor, the other issue, Judge Wilson, hit upon was the search. I think the real question for the search is not whether a search is unreasonable at all or overly intrusive. The question is whether in June of 2023, was the same-sex visual search of an arrestee, assuming, again, we have to get past the first question, but assuming there's probable cause to arrest for this. Well, I'm not past probable cause. Yes, ma'am. I understand. I guess I'll go back again. It's, you know, looking at the constellation of factors, which is what it is, no one particular thing. You know, you have the mixture of guns, the mixture of the prescription drugs without the prescriptions of the original pill bottles alongside the gun. That's enough to further the investigation. The fact that the charges were not pursued or even if she had been taken all the way and found factually innocent, that does not change the probable cause at the scene. And what's most important, there's no interpretation of the Louisiana controlled statute, the controlled substances statute that has said that it's a violation of the Fourth Amendment to arrest under these circumstances. Counselor, are you saying that there is never an obligation to consider exculpatory evidence when a stop is made and an attempt to evaluate probable cause occurs? Does the investigating officer have any obligation whatsoever to consider? And in this case, it was a claim that there was a prescription. But let's say if it was something like a particular wildlife or something, we're getting, you know, all the statutes about different types of wildlife that are controlled by the government in terms of importation. If someone has a license, does an investigating officer have an obligation to consider something like that? I don't know that I would describe it as an obligation or duty. I do think it falls under the larger rubric of deciding whether there's probable cause, whether the officer considered the totality. I think the excellent case on point here is the D.C. versus Westby case involving the partygoers in the house. They had an innocent explanation. They said, oh, no, we're here for a bachelor party. That's what we're here for. But there was some suspicion there they couldn't identify the bachelor. And the court ultimately afforded qualified immunity and said, there is at least, you know, the innocent explanation of the suspect doesn't negate probable cause. It's a factor to be considered. And probable cause can be found despite the innocent explanations of the suspects. Again, on both of these points, I think on the search and the arrest and the subsequent search, the question is whether these particular acts were prohibited expressly by either Supreme Court or Fifth Circuit law in June of 2023. They were not. And there's no cases establishing that. I'll reserve my time. Thank you, Mr. Blackwell. May it please the court. My name is Brian Blackwell. I'm appearing here today on behalf of one of the appellants, Officer Troy Lawrence, Jr. As you know, this is an interlocutory appeal from the denial of a 12 v. 6 motion to dismiss based upon qualified immunity. We would ask the court to reverse the decision of the district court and render a dismissal in favor of Officer Lawrence because the Second Amendment complaint doesn't plausibly allege personal involvement by Officer Lawrence in any constitutional violation. And even if it did, the clearly established law wouldn't have put an officer with his limited role on notice of any constitutional violation. First, the pleadings fail under Twombly and Iqbal because there are no facts that allege that showed that Officer Lawrence was a full active participant in any constitutional violation. Didn't he put her in handcuffs? He did. Didn't he instruct him, instruct her to get in the patrol car and go to the brave cave? He put her in handcuffs, stood her next to the car based upon what's alleged in the complaint and instructed her to get into a different vehicle. She couldn't fit in the back of any of the regular patrol vehicles, so they called another vehicle out to pick her up is my understanding of what happened. What case says that the officer cuffing the suspect is nothing more than a bystander? Well, there is no case that says an officer cuffing a suspect is anything more than a bystander, but under the circumstances of this case, his role was extremely limited. Well, what case says that to be an active participant, you've got to participate in all facets of an arrest or a search? Well, no case says that, Your Honor, but the question in the qualified immunity context is, is there a case that says by handcuffing and standing next to someone next to a car that you're an active participant? I get that. I mean, I get that the plaintiff bears the burden of rebutting the defensive qualified immunity, but it's not persuasive to me, at least, that he was a bystander. Just one of a dozen officers standing there and had no role whatsoever, he cuffed her. He helped her get in the car and instructed her to go to the brave cave or whatever. I mean, he was actively involved in facets of this. So are other officers, Your Honor. For example, in a case that was decided by the court, Whitley, there was a sexual abuse involved of an inmate at a prison. The officer was involved in that case and the court, despite the fact that he had limited involvement in the case, because he wasn't present at the time when the alleged constitutional violation occurred, the court granted qualified immunity in an appeal such as this. You know, we are limited here to the facts alleged in the complaint, but, you know, it has to be clearly established that someone standing next to a suspect and putting them in cuffs and standing there, that that was clearly established constitutional violation. Who told the driver of the vehicle where to take her? Well, except the complaint alleges that both Officer Lawrence and Detective Wallace did. But, but I take it, Counselor, you agree with your co-defendants counsel about probable cause for the arrest, that there's no dispute there or in your, in your, I guess you'd contest what the district court said as far as the arrest. Yes, Your Honor. You know, we had asked, you know, in our motion, there is video in the record. We asked that the judge review that video. He refused to do so because it wasn't specifically alleged in the complaint. That video will ultimately, I think, be dispositive of those interactions and what happened because Detective Wallace was wearing a body camera the whole time and it shows everything that was involved. Was there any discovery conducted at all up to this point? This is a Rule 12 motion. There has been. I assume that with the video, there would also be the normal limited discovery on qualified immunity. If we were to disagree with you, has anything been done in that regard? Discovery was stayed in the case, pending the disposition of the motions to dismiss. And so there hasn't been even no limited discovery in the case. And so, you know, if the court is inclined to affirm the judge's ruling, we would ask that it be remanded for that limited discovery to take place and, you know, allow the resubmission of the motions that were submitted based upon that limited discovery. What will the video show regarding probable cause? What will the video show? The video will show that Officer Wallace approached the vehicle. He saw a gun, which looks similar to me, to an Uzi coming out of Ms. Brown's purse. It'll also show the interactions with her husband, who was a felon, who was be prohibited by Louisiana law by being in possession of a firearm. And those interactions as well with the husband and with Ms. Brown as well. But did they know he was a felon at the scene? They did because they questioned him and he acknowledged that he was. Is that before or after they searched her purse? I think this was before they even entered the vehicle at all. You know, they took him out of the or asked him to come out of the vehicle and had a discussion with him. But as Mr. Tettleton said, there was clearly an open container of alcohol that was in clear view and you can clearly see it on the video as well. You've used your time. Mr. Thomas. Good morning, Your Honors. May it please the court. My name is Scott Thomas and I'm here representing Officer Catherine Alvarado-Cruz in this matter. We obviously are here today because we disagree with the district court's ruling on qualified immunity as to our client. Her role in this is tangential to the role of the arrest in that she is there simply because she is a female officer coming to conduct a search of a female arrestee for privacy concerns. The department has made it a policy that that's the way they handle this. She's called from another precinct to come down and do this search. From her vantage point, all the things that Mr. Tettleton and Mr. Blackwell have said, you know, she's not in the position to do an investigation into their investigation. What she is instead there to do is she has been brought in cuffs to a facility and a search is being requested and she is there to do the search and that's what she did. But she's traveling under the collective knowledge doctrine, right? And so basically, if the arrest was invalid, does that undermine her ability to do the search whatever the standard is for the search? I don't think in her position, Your Honor, that a reasonable officer in her situation would have I understand what you're saying about the collective knowledge doctrine. I'm not disagreeing in that sense, but I don't think a reasonable officer in her position would have known that what she was doing at that moment in time was violent of anybody's rights. Well, what if there was no probable cause? I think there was probable cause. Probable cause for the arrest. What if there was no probable cause for the search? Well, I think that the rules on searches allow for searches to be done in those circumstances. And I don't think that the Supreme Court or the Fifth Circuit has actually ruled on this type of search where she's not being placed into the general population and instead is being held in another facility. I don't think the Florence case from the Supreme Court settles that issue. And the secondary thing in that those were suspicionless searches. In this case, I would say that there was reasonable suspicion in this situation that she may have been. The district court said there had to be probable cause and it was clearly established. The district court cited Judge Dick's opinion, which I guess is an unpublished district court opinion, but also my very esteemed colleague, Judge Englehart's opinion when he was a trial judge surveying the law. This is all before this happened. This arrest happened and says it's clearly established that there had to be probable cause for a strip search. Oh, the Judge Dick ruling was actually after this case, I believe, Your Honor. That being said, I understand what you're saying, but I think that the cases that Judge Dick relied on were about non-arrestees. And again, from Catherine Alvarado Cruz's perspective, she was an arrestee and she was there to do the search. To ask her to know something beyond that is asking her to figure out things that she has no knowledge of at that state or situation. Well, what was the purpose of the search if she was going to be released? I don't think Ms. Alvarado Cruz knew she was going to be released at that point. The purpose of the search was that she was picked up with the possibility that she was some sort of basically drug person, you know, selling in the business of selling and distributing drugs and trying to find out whether there were any drugs or any other things, maybe weapons on her possession when they have her in custody. Again, from our vantage point, we believe that she was entitled to at the time that she did the search and she was there solely for the purposes of conducting a search because she was a female and Ms. Brown was a female. I see that my time is up there. Mr. Diggs. Thank you. May it please the court, I represent Appellee Turnell Brown defending the District Court's denial of qualified immunity. Three officers here violated clearly established Fourth Amendment law when they strip searched Mrs. Brown, forcing her to spread, excuse my language, her vagina and buttocks for flashlights. Counsel, I hate to interrupt you so early, but since you already touched the first base that I was going to, the primary question to me on your side of this case is what for each of these defendants, for each of the three defendants, you have to treat them individually, what is your best case with the most analogous facts that the officers couldn't do what they did and that the law was clearly established that said they could not do what they did? You just made mention of it. I know you're going to get to it, but I thought I would put it out there right now because that's what I'm waiting to hear from you. Understood, your honors. There's a few issues. One, there was no probable cause when they detained Ms. Brown. But then second, assuming that there was probable cause just for that stop, and I think the District Court said there was not even any reasonable suspicion, when they strip searched Ms. Brown, they also needed probable cause, and that's under the Williams case. And so when you go to each defendant officer, you have the standard. Under Milaire, officers are liable if full active participants are performing police functions integral to the violation and not a mere bystander. And so when you look at Detective Wallace, he conducted the warrantless vehicle search, he seized pills from the purse, he made decisions to transport to be further searched, he requested the stiff search, and he was one of the incident, handcuffed Ms. Brown, he guarded her while Officer Wallace conducted the unlawful vehicle search, he ordered her into the transport vehicle, he drove separately to the Brave case, but then jointly requested the strip search of Ms. Wallace, I mean with Wallace. And this far exceeds Milaire. In Milaire, you just have the officer standing at the door, and Officer Wallace did more than that. Then you have Officer Alvarado-Cruz, who physically conducted the search, it doesn't matter whether she was a female or male, she needed probable cause to do that, and she can't hide behind the facially invalid policy that BRPD had that the district court ruled that their strip search policy was invalid on its face, and so she can't hide behind that. You're traveling under Williams, we're not bound by the district court's rulings, no disrespect to the district court, but I don't even know that Judge Dick's ruling was published, it's not in the Fed Supps, so I haven't seen it, you don't even cite it in the brief. But you're traveling under Williams, but Williams was dealing with the individualized suspicion or probable cause, because there it was just a, they strip searched everybody that basically was in this club that they went in, and that's what our court said was problematic. You had to have individualized suspicion. I don't read Williams as establishing that the standard for a search like this was probable cause. How do you read Williams to have established that law? Well, I think that's what Williams says, Your Honor. Well, Williams uses reasonable suspicion and probable cause almost interchangeably at various parts of the opinion, and again, the focus of that case is whether there was individual suspicion, and here there was at least an individualized suspicion about Mrs. Brown. Well, the individualized suspicion about Mrs. Brown may go to the initial stop, and during that stop, the pills were visible in her purse, and those were seized by the officer. Afterwards, there were no furtive movements, there were no gestures made by Mrs. Brown, there were no bulges or anything by Mrs. Brown. She offered four times to prove that she had prescription to her pills. So, you're not conceding, I mean, you concede that there was reasonable suspicion to initiate the Terry stop? That, I do not agree that there was reasonable suspicion to initiate the Terry stop, but if there was, there was... I thought that's what you just said, that there was reasonable suspicion at the stop. I still think that the stop in and of itself, Your Honor, is unlawful, and anything from there, flowing from there, is fruit from the poisonous tree. Well, I thought they had tinted windows over the driver and passenger side of the vehicle, and that was illegal. So, there were tinted windows, and so, again, assuming that there wasn't, and for the sake of argument, I'll say that there could be reasonable suspicion. It's a very low standard for the initial stop, but everything afterwards, there was no probable cause. You have to have under, and I understand the court's understanding or argument for not taking Williams into consideration, although there is the two-step process. You have to have the general probable cause, and then the specific individualized probable cause that a person is hiding contraband within their body. In this case, the contraband was already taken. I'm sorry, Your Honor. Did you plead lack of probable cause to search the vehicle and the purse? Oh, in the complaint, Your Honor, it was briefly mentioned in terms of the stop, but it wasn't necessarily pleaded that the purse in and of itself was unlawful, which we would argue that that was as well. Well, but did you plead it? It wasn't specifically pled as to the search, and I don't know if that issue, Your Honors, and respectfully, is before the court. I know there's three issues. Well, of course it is, because if you're not contesting probable cause for the initial search of the vehicle and the purse, then you've got to come up with the case that clearly establishes that when they find the gun ... Counsel opposite says there's video that shows the gun in plain view. We don't know that, but when they find the gun and they find multiple pill bottles, et cetera, then what's your best case that clearly establishes that that's not enough for probable cause to arrest the suspect? Sure. That would be State v. Ross, Your Honor, 456 U.S. 798, which basically says, a traffic stop or window tint provides no probable cause to search a passenger's purse for a prescription medication. That is listed within, and that was one of Judge Gravo's district court findings in the Second Amendment complaint, essentially stating that absolutely no facts alleged in the Second Amendment complaint support a finding of regional suspicion to initiate the traffic stop or hold plaintiff during it. That's at ROA 961. Well, but if you didn't plead that probable cause was lacking at the initial stop or that there was no reasonable suspicion with the initial stop, I mean, I'm not following your argument. I mean, you're conceding it, but not conceding it. You're not pleading it, but you're not conceding it. I don't know how we'd get to ... I don't know where our starting point is. Right. And I understand, and that was my ... I misspoke. Now that I'm looking at it, it was plead, and that's why you had that, excuse me, the comment from Judge DeGravelis. And so it was the fact itself, I'm sorry, the initial stop itself didn't give rise to probable cause for any subsequent search. She may have had windows tinted, but afterwards they took out the pills, they saw that, and then therefore there was no consent, there wasn't a warrant or probable cause to look in Mrs. Brown's purse after the initial stop. The initial stop just gives reasonable suspicion, but not probable cause to do any of the searches thereafter. And so anything that was found thereafter is just fruit from the poisonous tree. Counsel, let me bring you back to my original question. I'm going to ask it specifically as to the defendant, in this case, Ms. Alvarado-Cruz. What is the best case that you can cite to us that it was clearly established that what she did under these circumstances was unconstitutional? Sure. And of course, indulgence, I have that right here. The best case, Your Honor, is just going on the collective knowledge. And so that's the best case that we have right there. The collective knowledge doctrine doesn't save Officer Alvarado-Cruz for three independent reasons. First, the collective knowledge included that Mrs. Brown repeatedly stated that she had prescriptions. The complaint alleges that Alvarado-Cruz was present when these statements were made and participated in rejecting them. Second, Ms. Williams' case established that probable cause is required for strip search. And even if collective knowledge applies to share this information, it doesn't eliminate the clearly established law requirement that was back in 2003 and the Williams incident happened in, I believe, 1995. And so you're saying that her participation in continuing this detention gives rise to a claim against her under Section 1983. What I understood, and maybe I completely misunderstood, was that the conduct of a strip search in particular, regardless of what the other two defendants did, that that was unconstitutional. And so when I asked the question, I was looking for a case governing strip searches saying under some jurisprudence that said thou shalt not conduct a strip search under circumstances X, Y, Z, which also happened to be the circumstances here. Am I misunderstanding your argument? No, not misunderstanding the argument, Your Honor. I still go back to- Well, what's a good strip search case that I should read that when I read it, I say, oh my goodness, Ms. Alvarado-Cruz, Officer Alvarado-Cruz committed an actionable Section 1983 claim. Sure. So that would be Florence v. Board of Chosen Freeholders. And essentially, it only applies, and I understand that the Supreme Court here didn't necessarily talk about out-of-custody arrestees, but in Florence, it's only limited to jail intake and general population context for institutional security reasons. The Brave case is a warehouse. It's not a jail. It's not a correctional staff. There's no general population. There's no institutional security concerns. Mrs. Brown, at this time, she was released. There were no charges. She never entered the jail system. And Florence expressly reserved this exact scenario. And also Chief Judge Dick also distinguished Florence for the same reasons. Is there a case that says you cannot conduct a strip search to look for contraband? Again, it goes- I don't know if there's a case on point that you can't do a strip search to look for contraband, but you have to have individualized specification. There is a case, and I'm sorry- Or let me state another way, to look for illegal drugs. If you think that a person might be transporting illegal or possessing illegal drugs, is there a case that says you can't strip search them for that? Sure. There's not a case that says that you can't strip search them for that, but you have to have individualized information that this individual, in this case, Mrs. Brown, could possibly have unlawful drugs in her possession. In this case, what we know is that the drugs were taken by the officers already, so they were no longer there. There is a case, and I'm sorry, it would escape me, that we discussed in our brief as distinguishable, I believe that the appellant cited, but in that case, the arrestee, when they just did a visual search, it wasn't a strip search, they did a visual search, and they could see that there was crack cocaine that was coming from that individual's buttocks. In that case, they saw and clearly were able to establish that that individual may be in possession of unlawful drugs. Again, in this case, the pills that are of concern were already taken by the officers, and I believe under the roof case, too, it's not unlawful to have prescription pills, even if they're in the same vial, and so therefore, again, going back, there was no probable cause to even conduct the search of Mrs. Brown. And well, you know, in your honors, courts and buildings. So again, as stated, the officers in this case, in all three of them, violated clearly established Fourth Amendment law when they strip searched Ms. Brown without probable cause and then released her without any charges. But I'm open to take more questions from your honors if there are any. Any further questions? Thank you, counsel. I think we have your argument in the list or something you want to add. Um, no, there's there's nothing that I want to add at this time. Thank you. Mr. Tittle, Tettleton. Your honor, I want to point out two things that I believe the questions from the panel to the appellee council really illustrate the point. What is this clearly established law? What is it here? I'll start with the arrest question. I think look no further than Thorn versus McGarry. That's Fifth Circuit 2017. An individual was arrested with an unlabeled bottle with Xanax in it. He could not produce the prescription at the roadside. He was arrested. The charges were ultimately dropped. He filed a 1983 action. And this court affirmed the grant of qualified immunity on that arrest because there was a violation of the statute. It was clear he was not able to he had the possession of the controlled substance, was unable to produce the prescription, and that was enough to afford those officers qualified immunity. And, you know, I think with respect to the strip search, the cases that were collected by Judge Inglehart on the district bench back in Sims are really essentially the same constellation of cases available today with the exception of Florence. You can sort them into two categories. I think Williams is on its own. It's a it's a mass strip search without any individualized suspicion at a nightclub. That's not this case. This is a this is a strip search in custody at a facility at a police facility conducted on probable cause on reasonable suspicion. And in the other cases, what the Kelly versus Cody case and even the old Stewart versus case, those all involved custodial searches without any kind of individualized suspicion. This case is different because there was individualized suspicion. Miss Brown had these prescription pills. I understand that the bottles that were readily accessible in her purse were taken from her, but they conduct the strip searches because they're looking for additional drugs. She's already possessed them. That gives them the suspicion to think there may be more in any event, this qualified immunity on both of these claims. And we request that it be reversed. Thank you. Thank you, counsel. We have your arguments in this case will be in the submission. Thank you. Thank you.